IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3229-F

| TERRY JOEL BURGESS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| BRUCE KELLY HAMM, *et al.*, | ) | |
| Defendants. | ) | |

This matter is before the court on two additional motions filed by plaintiff after this court entered an order and judgment [D.E. # 9 & 10] dismissing his complaint and closing this case. First, on August 25, 2012, plaintiff filed a document styled as a "Motion for a Restraining Order for up to One-Twenty Days (120) pursuant to Local Rule 77.2(j) Fed. R. Civ. P. Rule 65" [D.E. # 11]. Second, on September 1, 2012, plaintiff filed a document, in letter form, which this court construes as a motion to alter or amend the court's judgment dismissing plaintiff's complaint.[1] These matters are ripe for ruling.

I. Plaintiff's "Motion for a Restraining Order for up to One-Twenty Days (120) pursuant to Local Rule 77.2(j) Fed. R. Civ. P. Rule 65."

With this motion, plaintiff seeks an order of the court "prohibiting the internal search of

---

[1] Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, a motion to alter or amend a court's judgment "must be filed no later than 28 days after the entry of judgment." Plaintiff filed his motion approximately five days after the court entered its judgment. As such, the motion is properly treated as a Rule 59 motion. See Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 411 (4th Cir. 2010).

Plaintiff Burgess's person, clothing, and or property by Department of Public Safety Officers located at Scotland Correctional Institution without a search warrant . . . ." Pl.'s Mot. [D.E. # 11] 1. Essentially, plaintiff seeks an order of the court requiring correctional officials to obtain a search warrant prior to searching him or his belongings. Plaintiff asserts that "operational searches of prisoners by staff" at Scotland "have occurred for spiteful reprisal, based on a persons criminal histories or redress of grievances." Id. at 2. However, plaintiff fails to allege any specific instance in which he has been subject to an unwarranted search and instead asks that the court enter an order narrowing "the broad discretion" afforded to prison staff to conduct searches. Id. at 3. Plaintiff also fails to assert that any of his property has been destroyed as a result of an unwarranted search. Nevertheless, plaintiff asserts that "failure to order the Department of Public Safety: Prisons to comply with provisions of the General Statutes, relating to 'searches and seizures' . . . will result in, a violation of Plaintiff's Fifth and Fourteenth Amendment Rights to "Due process protection' and 'Equal Protection of the laws[.]'" Id.

As an initial matter, the court considers the authority for plaintiff's motion. Local Rule 77.2(j), relied upon by petitioner, merely authorizes the "clerk or deputy clerk" to enter an order on "[a]ny other motion, rule or order which may be granted of course or without notice." Rule 65 of the Federal Rules of Civil Procedure governs requests for temporary restraining orders, and provides "that a temporary restraining order shall not issue in the absence of "specific facts [which] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party may be heard in opposition." Fed. R. Civ. P. 65(b)(1). The United States Supreme Court has stated that the movant must establish the following to obtain a temporary restraining order or a preliminary injunction: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer

2

irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20 (2008); <u>The Real Truth About Obama, Inc. v. Federal Election Commission</u>, 575 F.3d 342, 345 (4th Cir. 2009), <u>vacated on other grounds</u>, __ U.S.__, 130 S.Ct. 2371 (2010).

Pursuant to these standards, Plaintiff's motion is plainly due to be denied. First, plaintiff can not show a likelihood of success on the merits. Plaintiff's suit, which did not concern any alleged unlawful or unreasonable searches, has already been dismissed. To the extent plaintiff might contemplate some suit based upon allegations of unlawful or unreasonable searches, such a suit would face an exceedingly high, if not insurmountable, burden. It is well-established that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 (1984). Next, plaintiff has not shown that there is a likelihood that he will suffer irreparable harm absent the relief he requests. Again, plaintiff has failed to allege even one instance in which he was the subject of an unreasonable search. He also has failed to allege that he has suffered loss or damage to his property as a result of a search. Finally, and most importantly, plaintiff can not show that the balance of equities tips in his favor, or that the public interest would be served by granting injunctive relief. For obvious reasons, which are clearly articulated in <u>Hudson, see id.</u> at 526-28, and foremost include the inherent danger and volatility of the prison environment, the public is keenly interested in the state's efforts to preserve and maintain safe and stable prisons. Plaintiff's

3

request that prison officials be made to obtain a warrant or his consent prior to searching his person or his belongings is completely devoid of legal foundation, is oblivious to the realities of prison administration, and is ludicrous on its face. Plaintiff's "Motion for a Restraining Order for up to One-Twenty Days (120) pursuant to Local Rule 77.2(j) Fed. R. Civ. P. Rule 65" will be denied.

II.   Plaintiff's Motion to Alter or Amend Judgment.

Plaintiff's September 1, 2012, letter, which this court construes as a motion to alter or amend judgment, contends that this court erred in dismissing plaintiff's complaint in-part on the ground that plaintiff had "failed to comply with the court's order April 5th 2012." Pl.'s Mot. [D.E. # 12] 1. In general, to succeed on a motion to alter or amend judgment, the movant must show "either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." Robinson, 599 F.3d at 407. Plaintiff's motion does not argue that there has been an intervening change in relevant law or that there is new evidence not previously available. Moreover, because plaintiff premises his motion on an error by this court in purportedly failing to acknowledge or overlooking one of his filings, it does not appear that plaintiff asserts that legal error warrants altering or amending the judgment. Thus, plaintiff's motion may succeed only if he demonstrates that Rule 59(e) relief is required to prevent "manifest injustice."

The court's order and judgment do not effect a "manifest injustice" on plaintiff. The court summarized the relevant procedural events in its order dismissing plaintiff's complaint as follows:

> Upon reviewing the complaint, the court determined that the core of plaintiff's allegations, that defendants unconstitutionally denied him the opportunity to participate in his preferred educational opportunities, had already been the subject of a prior complaint in this court. See Order [D.E. # 5] 2-3 (citing Burgess v. Hamm, et al., No. 5:10-ct-3170-BO). As the court noted, plaintiff's previous case was

4

dismissed because "[t]here is no constitutional right to participate in educational programs while incarcerated." Order 1, 5:10-ct-3170-BO (Feb. 4, 2011). Moreover, the court noted, plaintiff's appeal of that prior judgment was dismissed. Accordingly, the court found that, to the extent plaintiff's new complaint presented some variant of his prior claims, such claims, for the same reasons previously articulated, were frivolous. Furthermore, the court determined that the similar claims raised in the new complaint were barred by the doctrine of *res judicata*. See Order3 (citing United States v. Tohono O'Odham Nation, 131 S.Ct. 1723, 1730 (2011)). Accordingly, the court dismissed plaintiff's claims "concerning his denial of access to the distance education program at Lenoir Community College." Id. The court also noted that plaintiff's complaint arguably, if vaguely, presented allegations of retaliation. It was not clear to the court "whether plaintiff intended to present these allegations as additional claims of constitutional violations or as context for the allegations supporting his claims concerning denial of educational opportunities." Id. at 3-4. Thus, the court ordered plaintiff to file an amended complaint to "clarify the basis for his claims that he was subjected to retaliation and excessive punishment and further particularize his allegations respecting those claims." Id. at 4.

    On April 26, 2012, plaintiff filed a response to the court's order, which he captions as a "Motion to Amend the Judgment pursuant to Rule 60(b) of the Federal Rules of Civ. Proc." [D.E. # 7]. The "motion" seeks amendment of the court's April 5, 2012, order, ostensibly on the basis that this court erred in concluding that petitioner's claims are subject to dismissal as frivolous or barred by *res judicata*. Plaintiff has not submitted an amended complaint particularizing his retaliation allegations, as instructed by the court.

Order [D.E. # 9] 1-2. In the instant motion, plaintiff objects to the court's finding that plaintiff "has not submitted an amended complaint particularizing his retaliation allegations, as instructed by the court." He contends that he did file an amended complaint as instructed by the court, and that the court has mistakenly overlooked the filing of this amended complaint in dismissing his case.

Indeed, plaintiff did file a document which he styled as an "Amended Complaint" in response to this court's April 5, 2012, order. See Pl.'s Resp. [D.E. # 6]. However, for the numerous reasons that follow, this court did not consider the "Amended Complaint" responsive to the court's order that plaintiff amend and particularize specifically, and exclusively, any intended allegations of retaliation or excessive punishment he vaguely alluded to in his original complaint. Moreover, to the extent

5

the allegations of this "Amended Complaint" could be construed as responsive to this court's prior order to amend, it is apparent that plaintiff's retaliation and excessive punishment claims fail to state claims upon which relief could be granted. Thus, there is no "manifest injustice" warranting altering or amending the court's judgment.

The court first reiterates its instructions to plaintiff in its order directing him to amend his complaint. The court explained as follows:

> While the majority of plaintiff's suit is subject to dismissal as frivolous or barred by res judicata, plaintiff also appears to vaguely allege that he suffered retaliation, including an elevation in his custody status, for his filing of grievances, and that he received excessive punishment for a disciplinary infraction involving his possession of a cellular phone. It is not clear from the complaint whether plaintiff intended to present these allegations as additional claims of constitutional violations or as context for the allegations supporting his claims concerning denial of educational opportunities. To the extent plaintiff intended to present separate claims, the allegations are only marginally discussed in the complaint and are vague and lack sufficient specificity to satisfy the pleading requirements of the Federal Rules of Civil Procedure. These circumstances alone justify summary dismissal of the claims pursuant to § 1915(e), for failure to state a claim upon which relief can be granted. However, the court is mindful that outright dismissal of pro se complaints is not favored where the defects in the complaint may be curable through amendment. McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009). Accordingly, the court will allow plaintiff the opportunity to amend his complaint to clarify the basis for his claims that he was subjected to retaliation and excessive punishment and further particularize his allegations respecting those claims.

Order [D.E. # 5] 3-4. Thus, the court instructed plaintiff to "file an amended complaint which describes in detail his allegations that he was retaliated against for the filing of grievances and was punished excessively for certain infractions. Plaintiff shall also provide documentation, if any, of his administrative exhaustion of these claims with the amended complaint." Id. at 4.

The "Amended Complaint" which plaintiff filed in response to this order fails to comply with the court's instructions. To begin with, plaintiff plainly did not heed the court's instruction that he

6

particularize only his allegations respecting any claim of excessive punishment or retaliation. The "Amended Complaint" expends considerable effort attempting to relitigate the claims and issues already disposed of in the court's order of partial dismissal. Indeed, plaintiff even explicitly predicates his "Amended Complaint" on the inapplicable authority of Rule 60(b) of the Federal Rules of Civil Procedure, which provides the grounds pursuant to which an aggrieved party may seek relief from a final judgment. See Pl.'s Resp. [D.E. # 6] 1. Within the body of the "Amended Complaint," plaintiff repeats the same factual allegations, with somewhat greater detail, respecting the denial of his so-called rights to "freely associate" with the public and seek educational opportunities. In several places, plaintiff explicitly requests that the court revisit or amend its prior order that plaintiff's education and association claims are frivolous and barred by *res judicata*. See, e.g., Pl.'s Resp. 8 ("Plaintiff Burgess pursuant to Rule 60(B) and Rule 52(b) . . . asserts, that this court's ruling should be rescinded regarding the initial merits of Plaintiff's prosecutrix."); id. at 9 ("However, saying such course regards significance to respectfully ask, this court to amend its judgment; based upon facts raised in Plaintiff's adjoining memorandum of law: regarding defendant Tezra Egleton."); and id. at 22-23 ("Pursuant to Federal Rules of Civil Procedure Rule 59(e) Plaintiff Burgess asks this court to amend its judgment entered April 5th 2012 to replace as a defendant Tezra Egleton . . .").

In the "Constitutional Civil Claims" portion of the "Amended Complaint," plaintiff continues restating his general claims about the denial of his supposed rights to education and free association, claims that had been dismissed by the court's order. See id. at 22 ("Defendant, Bruce Kelly Hamm: knowingly, abusively and oppressively denied Plaintiff Burgess; of his 'procedural due process rights' by refusing to enroll Plaintiff for classes at Lenoir Community College . . ."); id. at 28

7

("Plaintiff Burgess asserts that, this courts ruling was inconsistent with the facts related to the judgments entered regarding Tezra Egleton and; Plaintiff's 'constitutional right to education' and 'right to freely associate with the public.'"). In fact, the "Constitutional Civil Claims" portion of the "Amended Complaint" consists almost entirely of plaintiff's argument about the viability of his supposed "due process" claims related to the denial of his purported education and free association rights. See id. at 22-28. These efforts were clearly beyond the scope of what the court instructed plaintiff to include in his amended complaint. And, as the court made clear in its order dismissing this case, these arguments are without merit and plaintiff's claims, even if characterized as procedural due process claims, are frivolous and barred by *res judicata*. See Order [D.E. # 9] 3-7. Because plaintiff's "Amended Complaint" so blatantly sought to relitigate matters already decided by this court rather than focusing exclusively on those matters which the court had instructed plaintiff to address, the court rightly determined that plaintiff had failed to "abide by the orders of the court" and dismissed this action.

In any event, to the extent plaintiff's "Amended Complaint" actually includes allegations respecting any purported retaliation against him for filing grievances or excessive punishment imposed upon him for his disciplinary violations, the "Amended Complaint" only makes clear that those claims–if he ever intended to articulate them independently of the "right to education" and "free association" claims at the heart of his complaint–fail to state claims upon which relief could be granted. As such, the dismissal of those claims was proper and did not result in a "manifest injustice." Plaintiff's allegations respecting any intended claim of retaliation or excessive punishment are mostly vague and confusing. However, it appears that the two "claims" actually relate to the same circumstance: the discipline imposed on plaintiff for his willful violation of prison

regulations. Specifically, plaintiff admits that he "pled 'guilty'" after being found in possession of a cellular phone, a "Class A," or "most serious," disciplinary offense. See Pl.'s Resp. [D.E. # 6] 9; Policy and Procedure, N.C. D.O.C. Dept. Of Public Safety, Chpt. B, § .0202 & (a)(A16). Plaintiff complains that he was denied procedural and substantive due process rights when he was placed in Intensive Control ("ICON") status[2] after his commission of the offense. Id. at 15. He maintains that this punishment was both excessive for his infraction and, moreover, was the product of defendants' retaliatory motive after his filing of grievances about the failure to allow him to participate in his desired education programs. Id.; id. at 17-18; id. at 30.

Plaintiff's retaliation claim is, like his "right to education" and "freedom of association" claims, subject to summary dismissal as frivolous and for failure to state a claim upon which relief could be granted under § 1915(e)(2)(B)(ii).

> [C]laims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution. That is, plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right. A claim of retaliation that fails to implicate any constitutional right "lacks even an arguable basis in law," and is properly subject to dismissal under § 1915(d).

Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (citations omitted). In general, retaliation claims by

---

[2] According to North Carolina Department of Correction regulations, ICON "is the long-term removal of close custody . . . inmates from the general inmate population to confinement in a secure area. The intent is the control of offenders whose behavior has proven to be repeatedly disruptive to the operations of the facility, non-compliant with instructions and orders, or as a transition following assignment to maximum control status. Intensive control is authorized at any point during an offender's confinement if needed to contain the offender in a more secure environment over a long period of time." See Policy & Procedures, N.C. D.O.C. Div. Of Prisons, Chpt. C, § .1301(a). The regulations further state that assignment to ICON status is generally done to "protect staff and other inmates from the threat of harm by the inmate;" "to minimize the risk of escape by the inmate or others influenced by his actions;" "to preserve order where other methods of control have failed;" and "to provide necessary control while completing an investigation." Id.

inmates are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams, 40 F.3d at 74. "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'" Kelly v. York County Prison, 340 F. App'x 59, 61 (3rd Cir.2009) (quoting Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003)).

To begin with, even assuming that plaintiff has a constitutionally protected right to file grievances[3] and that discipline inflicted upon him for such acts could amount to a constitutional violation, plaintiff has failed to show that the disciplinary action in this case–placement on ICON status–wold deter an ordinary inmate from exercising his constitutional rights, including the filing of grievances. Indeed, in this case plaintiff filed grievances about his placement on ICON status. Nor can it be said that placement on ICON status itself violated plaintiff's constitutional rights. Inmates have no inherent constitutional right to a particular custody classification. See Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) (citations and internal quotations omitted) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as the challenged conditions or degree of confinement . . . is within th sentence imposed . . . and is not otherwise violative of the Constitution."). Likewise, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse

---

[3] Even as to this point, plaintiff's "right" is not certain. See Adams, 40 F.3d at 75 ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").

10

conditions of confinement." Wilkinson v. Dotson, 545 U.S. 209, 221 (2005). While "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations," id. at 222, plaintiff does not complain that he was deprived of any of the procedural protections–meaning notice and an opportunity to be heard–which the regulations establishing ICON mandate. Indeed, it cannot be said that North Carolina law creates a protected liberty interest in avoiding ICON classification which is protected by due process. The regulations establish that, while there are formal procedures and some general criteria to be followed when placing an inmate on ICON status, the final decision on any referral application for ICON status rests with the "approving authority," the Director of Prisons or his designee. Policy and Procedures, N.C. Dept. Of Corr., Chpt. C, §§ .1302(c) & (d)(4), .1304(a). This interposition of a final discretionary arbiter negates any claim of procedural due process protection. See Slezak, 21 F.3d at 595 ("Thus, even if a state law regime mandates both a detailed procedural process for making classification decisions, and substantive criteria to be used in making those decisions, no constitutionally protected liberty interest is thereby created if under the regime either the primary decisionmaker or any reviewing authority is authorized to override, as a matter of discretion, any classification suggested by application of the prescribed substantive criteria."). Finally, plaintiff makes no allegations respecting the conditions of his confinement while on ICON status which would support a finding that assignment to ICON "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).[4] For all of these

---

[4] The only allegation the court discerns in plaintiff's "Amended Complaint" respecting any adverse condition of confinement owing to plaintiff's ICON status is his claim that he suffered "atypical hardship on Plaintiff's mental state." Pl.'s Resp. [D.E. # 6] 29. Plaintiff asserts that he "suffers, from a series of emotional disorders" and that his assignment to ICON violated his "legal
(continued...)

reasons, plaintiff's allegations about his classification on ICON status fail to state constitutional claims upon which relief could be granted.

More fundamentally, the factual basis for this claim set forth in plaintiff's "Amended Complaint" is simply inadequate. Plaintiff has failed to allege any facts substantiating his claim that he was placed on ICON status merely because of his prior grievances, and his bare speculation or conclusion that such a nexus exisits is insufficient to state a viable claim of retaliation. Plaintiff's pleadings must consist of "'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atlantic Com. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255-56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Furthermore, plaintiff's unwarranted factual conclusion ignores the reality that he was placed on ICON status due to his commission of a very serious disciplinary offense for which he admitted his guilt. The Department of Correction's response to plaintiff's grievance about his ICON classification, which plaintiff provided with his "Amended Complaint," confirms this conclusion:

> Intensive Control is not a form of punishment as you alleges [sic]. Intensive Control is assignment to a more secure environment as necessitated by your actions and behaviors in order to maintain the safety and security of the facility as well as the safety and security of the general public. North Carolina Division of Prisons Policy and Procedure Chapter C, section .1301(a)(2) clearly states that Intensive Control is authorized [illegible] inmate in order to prevent the risk of escape by the inmate or others influenced by his actions. You were found in possession of a cellular phone on May 14, 2010, during a routine search. These phones are in direct violation of

---

[4](...continued)
right to psychiatric care." Id. at 30, 31. However, the regulations establishing ICON procedures also provide for "therapeutic control," "a status theat recognizes the need for security as well as the need for treatment of mental illness." Policy and Procedures, N.C. Dept. Of Corr., Chpt. C, § .1302(f). The regulations fully provide for the accommodation and treatment of inmates assigned to ICON who suffer from mental illnesses. Id.

> DOP Policy and pose a serious risk the safety and security of the facility and the general public in that they can be sued [sic] for unauthorized communication with individuals outside the facility to organize an escape or other illegal activities which can endanger the general public or staff and inmates inside the facility. In this event, Intensive Control is an appropriate authorized assignment in order to attempt to control this behavior.

Ex. 28 to Pl.'s Resp.[D.E. # 6-1] 13. Plaintiff's claim that, notwithstanding his commission of a very serious disciplinary offense with direct implications on the security of inmates, staff, and the general public, he was assigned to ICON status merely because of a grudge held by the target of a prior grievance invites precisely the sort of federal court intrusion into matters of prison administration that the <u>Adams</u> court specifically counseled should be summarily dismissed by a reviewing court:

> In addition, we believe that *in forma pauperis* plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive [frivolity review pursuant to § 1915(e)]. To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation. This would pose particular problems in the context of prison administration. Every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct. The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

40 F.3d at 74. In this case, it is clear that plaintiff was assigned to ICON status due to his illicit possession of a cellular phone. Plaintiff's conslusory allegation that his ICON classification was retaliation for the filing of a prior grievance amounts to nothing more than an unwarranted conclusion which is rebutted by plaintiff's own pleadings and supporting submissions. Thus, plaintiff has failed to state a claim upon which relief could be granted and his retaliation claim is subject to dismissal pursuant to § 1915(e)(2)(B)(ii), in addition to the grounds previously stated by the court. As such, the court's prior order of dismissal effects no "manifest injustice" on plaintiff

13

and his motion to alter or amend the court's judgment is due to be denied.

III. Conclusion

For all of the foregoing reasons, plaintiff's "Motion for a Restraining Order for up to One-Twenty Days (120) pursuant to Local Rule 77.2(j) Fed. R. Civ. P. Rule 65" [D.E. # 11] and motion to alter or amend judgment [D.E. # 12] are DENIED.

SO ORDERED. This the 12th day of September, 2012.

JAMES C. FOX
Senior United States District Judge